UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FERNANDO GASTELUM,<br><br>    Plaintiff,<br><br>    v.<br><br>THE TJX COMPANIES, INC.,<br><br>    Defendant. | Case No. 21-cv-06714-VKD<br><br>**ORDER DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; ORDER TO SHOW CAUSE RE SUPPLEMENTAL JURISDICTION**<br><br>Re: Dkt. No. 28 |

Pro se plaintiff Fernando Gastelum challenges accessibility barriers he claims he encountered at stores allegedly owned or operated by defendant The TJX Companies, Inc. ("TJX").[1] TJX moves pursuant to Rule 12(b)(1) to dismiss Mr. Gastelum's second amended complaint ("SAC") for lack of standing to seek injunctive relief under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12182, *et seq.* TJX also argues that the Court should dismiss or decline jurisdiction over Mr. Gastelum's claim under the California Unruh Civil Rights Act ("Unruh Act"). Mr. Gastelum opposes the motion. Upon consideration of the moving and responding papers, as well as the parties' oral arguments, the Court denies TJX's motion to dismiss the ADA claim and directs Mr. Gastelum to show cause why the Court should not decline to exercise supplemental jurisdiction over the Unruh Act claim.[2]

---

[1] TJX contends that the proper parties to this lawsuit are HomeGoods, Inc., Marshalls of CA, LLC, and TJ Maxx of CA, and not The TJX Companies, Inc. Dkt. No. 28 at 1 n.1.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 9, 14.

## I.  BACKGROUND

According to his pleadings, Mr. Gastelum is a man in his sixties, who is missing one leg, uses a wheelchair for mobility, and has a specially equipped sport utility vehicle.  Dkt. No. 27 ¶ 1.  Mr. Gastelum says that "[s]ince 2015, [he] has been using a wheelchair for mobility in locations that are designed for wheelchair use."  *Id*. ¶ 2.  His claims are based on accessibility barriers as "relates to wheelchair users like [himself]."  *Id*. ¶¶ 11, 22, 24, 26, 28, 30, 32, 34, 36.

In his original complaint filed on August 30, 2021, Mr. Gastelum claimed he encountered accessibility barriers during a June 30, 2021 visit to a HomeGoods store located in Gilroy, California—namely, "[u]nsecured carpets within the store [that] impede [his] ability to wheel [him]self over uneven ground in [his] wheelchair"; "[p]rotruding objects [that] reduce clear width of accessible routes between rows of merchandising displays" that "make[] it more difficult for [him] to move between the rows of merchandise and shop in [his] wheelchair"; "[c]ear width of accessible routes less than 32 inches between rows of merchandising displays" that "makes it more difficult for [him] to move between the rows of merchandise and shop in [his] wheelchair"; and a "[r]estroom door requir[ing] greater than 5 lbs of force to open" that "makes it more difficult for him to open the restroom door to use the facility in [his] wheelchair."  Dkt. No. 1 ¶¶ 4(a)-(d).  Although the complaint did not identify discrete claims for relief, the Court construed Mr. Gastelum's pleading as one asserting claims under Title III of the ADA and the Unruh Act.  Mr. Gastelum also clarified that his complaint was based on a "deterrence" theory, "and not on injury in fact coupled with intent to return[.]"  Dkt. No. 15 at 5; *see also* Dkt. No. 1 ¶ I.6; Dkt. No. 18 at 4.

On January 19, 2022, the Court granted TJX's motion to dismiss the complaint pursuant to Rule 12(b)(1), finding that Mr. Gastelum's allegations were conclusory and did not establish his standing, under either an intent to return theory or a deterrence theory, to sue under the ADA.  Dkt. No. 18.  Because the ADA claim was dismissed for lack of jurisdiction, the Court had no authority to retain jurisdiction over the Unruh Act claim, which was dismissed without prejudice.  *Id*. at 7.  Mr. Gastelum was given leave to amend.  *Id*. at 7-8.

After Mr. Gastelum filed his first amended complaint regarding the Gilroy HomeGoods

store (Dkt. No. 21), the parties stipulated to the filing of the SAC (Dkt. No. 24). The SAC continues to assert claims under the ADA and the Unruh Act, but now expands those claims beyond the Gilroy HomeGoods store and includes allegations about accessibility barriers Mr. Gastelum says he encountered during visits to seven other Marshalls and TJ Maxx stores located throughout California. *See* Dkt. No. 27. TJX does not agree that Mr. Gastelum properly includes these new allegations in the SAC, but says that it stipulated to the filing of the SAC, without waiving any defenses, to avoid additional motions practice. Dkt. No. 24. The Court granted the stipulation. Dkt. No. 25.

In the SAC, filed on March 22, 2022, Mr. Gastelum alleges that he first visited the HomeGoods store in Gilroy on June 30, 2021 "with the intention to avail himself of their goods or services" and was "motivated in part to determine if the Defendant complies with the disability access laws." Dkt. No. 27 ¶ 10. Mr. Gastelum realleges that "[a]s a wheelchair user," he was denied full and equal access to the store due to barriers he encountered concerning unsecured carpets, protruding objects, inadequate clear width in accessible routes, and a restroom door that was too heavy to open. *Id*. ¶¶ 11-13. The SAC further alleges that Mr. Gastelum "will return to the [HomeGoods store] to avail himself of its goods and services and to determine compliance with the disability access laws once it is represented to him that the [HomeGoods store] is accessible." *Id*. ¶¶ 18, 41.

While alleging that he was "deterred" from returning to the HomeGoods store "due to his actual personal knowledge of the barriers gleaned from his encounter with them," the SAC includes a new allegation that Mr. Gastelum "intended to return to the HomeGoods Store at a specific time in January of 2022 and did so on January 25, 2022"—about one week after the Court dismissed his original complaint for lack of standing. *Id*. ¶¶ 10, 20. During the alleged January 25, 2022 visit, Mr. Gastelum says he noted most of the same barriers he encountered during his first visit, namely that there were still protruding objects in accessible routes, accessible routes that were too narrow to navigate with his wheelchair, and a restroom door that was too heavy to open. *Id*. ¶ 22.a.-c. The SAC states that Mr. Gastelum intends to return to the HomeGoods store "during his visit to the Gilroy area scheduled for June of 2022," although in his opposition papers Mr.

3

Gastelum says that he plans to return to the store in January 2023. *Id.* ¶ 45; Dkt. No. 32 ¶ 33.

Mr. Gastelum asserts that he encountered similar barriers at the other stores in question during a visit to each of those stores on dates in 2021 and 2022 "to avail himself of their goods or services motivated in part to determine if the Defendant complies with the disability access laws." *See* Dkt. No. 27 ¶¶ 23-36. As to each of these stores, Mr. Gastelum alleges that "he wanted to return and patronize the business but was specifically deterred due to his actual personal knowledge of the barriers gleaned from his encounter with [the alleged barriers]." *Id.* ¶¶ 23, 25, 27, 29, 31, 33, 35. For the most part, Mr. Gastelum's alleged visits to these stores occurred on dates in June 2021 and August 2021 prior to the filing of the present lawsuit; however, the SAC alleges that he visited a Marshalls store in Fresno on January 25, 2022 and a Marshalls store in El Centro on February 24, 2022. *See id*.

Mr. Gastelum seeks injunctive relief under the ADA and the Unruh Act; "equitable nominal damages for violation of civil rights"; $32,000 in damages under the Unruh Act for the visits to the eight stores at issue; and, in the event he is required to hire counsel, reasonable attorney's fees, costs and litigation expenses. Dkt. No. 27 at 13-14.

TJX now moves pursuant to Rule 12(b)(1) to dismiss the SAC, arguing that the ADA claim must be dismissed because Mr. Gastelum still fails to establish his standing to seek injunctive relief. Because the ADA claim is the sole basis for federal jurisdiction, TJX argues that the Unruh Act claim must also be dismissed. Alternatively, TJX requests that the Court decline to exercise supplemental jurisdiction over that claim.

## II.   LEGAL STANDARD

Standing is a jurisdictional issue properly addressed under a Rule 12(b)(1) motion. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). A Rule 12(b)(1) motion to dismiss challenges a federal court's jurisdiction over the subject matter of a plaintiff's complaint. A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual attack"). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a

4

complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a facial attack on jurisdiction, the record is limited to the complaint and materials that may be judicially noticed. *See Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017). Additionally, the Court accepts well-pled allegations of the complaint as true, draws all reasonable inferences in Mr. Gastelum's favor, and determines whether his allegations are sufficient to support standing. *Id*.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id*. (internal quotations and citation omitted).

As the party asserting federal subject matter jurisdiction, Mr. Gastelum bears the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## III.   DISCUSSION

TJX makes a factual attack on Mr. Gastelum's allegations concerning his standing to pursue an ADA claim, and maintains that, in any event, the SAC does not allege sufficient facts to support standing.

### A.   Standing re ADA Claim

Under Article III of the Constitution, federal courts have jurisdiction to decide only actual cases or controversies, U.S. Const., art. III, § 2, and Mr. Gastelum has standing to sue if he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Mr. Gastelum's claimed injury must be both "particularized" and "concrete." A

1  "particularized" injury is one that "'affect[s] the plaintiff in a personal and individual way.'"
2  *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).  A "concrete" injury "must
3  actually exist" and must be "real, and not abstract."  *Id*. at 340.

4  Additionally, in the context of injunctive relief, which is the only remedy available to Mr.
5  Gastelum under Title III of the ADA, he "must demonstrate a 'real and immediate threat of
6  repeated injury' in the future."  *Chapman v. Pier 1 Imports (U.S.), Inc*., 631 F.3d 939, 946 (9th
7  Cir. 2011) (quoting *Fortyune v. Am. Multi-Cinema, Inc*., 364 F.3d 1075, 1081 (9th Cir. 2004)); *see
8  also Lujan*, 504 U.S. at 564 ("Past exposure to illegal conduct does not in itself show a present
9  case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present
10 adverse effects.") (internal quotation marks omitted)).  Thus, an ADA plaintiff may establish
11 standing "either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an
12 intent to return to a noncompliant facility."  *Chapman*, 631 F.3d at 944.  While courts take a broad
13 view of constitutional standing in disability access cases, "the ADA's reach is not unlimited."  *Id.*
14 at 946.

### 1. Barriers Related to Mr. Gastelum's Disability

16 With respect to the SAC as a whole, TJX raises a factual challenge to allegations indicating
17 that Mr. Gastelum used a wheelchair during the alleged visits to the stores in question and that he
18 suffered any injury-in-fact as a wheelchair user.  Here, TJX contends that Mr. Gastelum is not
19 exclusively a wheelchair user, and also uses a prosthetic leg and cane.  TJX asks the Court to
20 review a surveillance video, submitted by a defendant in another of Mr. Gastelum's accessibility
21 lawsuits, which reportedly shows Mr. Gastelum checking into the subject facility (in that case, a
22 hotel) using a prothesis and cane, rather than a wheelchair.  See Dkt. No. 28-1 ¶ 2.

23 The Court does not find it appropriate or necessary to consider the video.  TJX impliedly
24 suggests that the Court may consider the video, and accept it as proper evidence, simply because a
25 defendant in another case filed a declaration about it.  *See* Dkt. No. 28 at 4 & n.4.  TJX, however,
26 has not asked the Court to take judicial notice of the video or provided any other evidentiary basis
27 for the Court's proper consideration of it.  Even assuming the video shows what TJX says it does,
28 it is irrelevant and does not contradict Mr. Gastelum's allegations that he uses a wheelchair,

including on his visits to the stores in question. In a declaration, Mr. Gastelum avers that he has both a non-motorized wheelchair and an electric mobility scooter. Dkt. No. 32 ¶ 7. At the motion hearing, he clarified that the term "wheelchair" in the SAC refers to his mobility scooter and that he used the scooter during his visits to the stores at issue. Dkt. No. 38. Mr. Gastelum does not deny that he sometimes also uses a prosthesis and cane. But he says that he prefers to use a wheelchair because walking with the prosthesis and cane is uncomfortable and painful, and even with the prosthesis and cane, his walking is still "severely restricted." Dkt. No. 32 ¶¶ 5-6. He further avers that "[s]ince 2015, [he has] been using a wheelchair for mobility in locations that are designed for wheelchair use, that is, accessible routes that provide firm, level surface[s] and that are wide enough to navigate [with his] wheelchair." *Id*. ¶ 3. But "even where the accessible route is wheelchair friendly," Mr. Gastelum says that wheelchair use still "causes secondary problems," for example when doors "require significant pulling or pushing to open[.]" *Id*. ¶ 8. The fact that a surveillance video shows that Mr. Gastelum may have used his prothesis and cane on a different occasion at a different facility does not refute the SAC's allegations indicating that he visited the stores in question using a wheelchair. *See, e.g., Gastelum v. Blue Diamond Hospitality*, No. 5:21-cv-06234-EJD, 2022 WL 4292957, at *3-5 (N.D. Cal. Sept. 16, 2022) (concluding that surveillance video from another hotel was irrelevant to Mr. Gastelum's allegations that he used a wheelchair during the visit to the defendant's hotel).

TJX nonetheless maintains that the SAC is deficient because Mr. Gastelum does not expressly say that he used a wheelchair during his visits to the specific stores in question. The Court is not persuaded that Mr. Gastelum is required to plead the level of specificity TJX advocates. The SAC's allegations, reasonably construed, indicate that Mr. Gastelum uses a wheelchair for mobility, that he used a wheelchair (or scooter) on the visits at issue, and that the barriers he reportedly encountered present accessibility problems for wheelchair users. Dkt. No. 27 ¶¶ 1, 2, 11, 22, 24, 26, 28, 30, 32, 34, 36. These allegations are sufficient to show that Mr. Gastelum encountered barriers related to his disability. To the extent TJX argues that the SAC does not plausibly allege that Mr. Gastelum encountered barriers related to his disability as a wheelchair user, the motion to dismiss is denied. *See, e.g., Blue Diamond Hospitality,* 2022 WL

7

1    4292957, at *4-5 (finding allegations regarding Mr. Gastelum's use of wheelchair and barriers

2    sufficient to support an injury-in-fact). *Cf. Rutherford v. Cesar's Mexican Restaurant, LLC*, No.

3    19cv1416-LAB (JLB), 2019 WL 4193392, at *2 (S.D. Cal. Sept. 3, 2019) (finding that plaintiff

4    failed to establish standing for an ADA claim where he alleged use of both a wheelchair and a

5    cane, said he used a cane at defendant's facility, did not clearly allege how the alleged barriers

6    affected him, and said he would be deterred from returning while using a walker or wheelchair but

7    did not allege facts that he was likely to rely on either a walker or a wheelchair when he returned).

## 2. Real and Immediate Threat of Repeated Injury

TJX also argues that Mr. Gastelum has not plausibly alleged facts nor presented any evidence establishing that he faces a real and immediate threat of repeated injury, as required to seek injunctive relief on his ADA claim. "Although encounters with the noncompliant barriers related to one's disability are sufficient to demonstrate an injury-in-fact for standing purposes, a plaintiff seeking injunctive relief must additionally demonstrate a sufficient likelihood that he will again be wronged in a similar way.'" *Chapman*, 631 F.3d at 948 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Courts "have Article III jurisdiction to entertain requests for injunctive relief both to halt the deterrent effect of a noncompliant accommodation and to prevent imminent 'discrimination,' as defined by the ADA, against a disabled individual who plans to visit a noncompliant accommodation in the future." *Id.* at 950. "Thus, an ADA plaintiff can show a likelihood of future injury when he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier." *Id.* "Alternatively, a plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *Id.* A plaintiff "'need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury.'" *Civil Rights Educ. & Enf't Ctr. v. Hospitality Props. Tr.* ("*CREEC*"), 867 F.3d 1093, 1099 (9th Cir. 2017) (quoting *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002)). "'So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id.* (quoting *Pickern*, 293 F.3d at 1137).

8

TJX contends that neither the SAC's allegations nor Mr. Gastelum's declaration submitted with his opposition to the present motion to dismiss demonstrates a genuine intent to return to the stores in question or that he was deterred from visiting them. The Court turns first to the Gilroy HomeGoods store, which was the only store identified in Mr. Gastelum's original complaint and which TJX correctly notes is the only store for which the SAC alleges an intent to return.

Citing the general rule that standing ordinarily depends on facts as they exist at the time the original complaint is filed, TJX argues that the SAC's new allegations that Mr. Gastelum "intended to return to the [HomeGoods store] at a specific time in January of 2022 and did so on January 25, 2022" (Dkt. No. 27 ¶ 20), as well as assertions in his declaration that he visited the store again on May 18, 2022 and plans to return in January 2023 (Dkt. No. 32 ¶ 33), are irrelevant and should not be considered in assessing Mr. Gastelum's standing. TJX contends that these alleged post-complaint visits do not reflect a genuine intent to return to the store, but are instead a blatant attempt to manufacture standing after the Court found Mr. Gastelum's original complaint deficient. TJX maintains that, in any event, Mr. Gastelum fails to allege adequate facts or to present any evidence demonstrating a genuine intent to return to the Gilroy HomeGoods store.

TJX is correct that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989); *see also Lujan*, 504 U.S. at 570 n.4 (noting the "longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed."). Thus, "[t]he requisite personal interest," i.e., standing, "must exist at the commencement of the litigation[.]" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, (2000) (citation omitted); *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) ("The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint.").

In the present case, the timing of Mr. Gastelum's alleged post-complaint visits to the Gilroy HomeGoods store strongly suggests that he may have developed a claimed intent to return to that store only after the Court found his original complaint deficient, and after TJX filed the present motion to dismiss contending that the SAC's allegations are inadequate. Indeed, Mr.

9

Gastelum previously indicated that his original complaint was based solely on a deterrence theory, rather than on an intent to return to the Gilroy HomeGoods store. *See* Dkt. No. 1 ¶ I.6 ("I will not return back to Defendant's place until it becomes fully compliant with federal and state disability laws."); Dkt. No. 15 at 5 (indicating intent to proceed on a deterrence theory "and not under the 'injury-in-fact coupled with an intent to return' alternative."). Mr. Gastelum now claims that he "intended to return to the Home[G]oods [s]tore at a specific time in January of 2022," and visited the HomeGoods store a second time on January 25, 2022 (one week after the Court dismissed his original complaint on January 19, 2022) and again on May 18, 2022 (about two weeks after TJX filed the present motion to dismiss on May 6, 2022). Dkt. No. 27 ¶ 20; Dkt. No. 32 ¶ 33. To the extent these allegations are meant to establish a purported intent to return to the HomeGoods store, they might be viewed as an attempt to retroactively create standing based on facts that did not exist at the time Mr. Gastelum commenced this action. *See Whitaker v. Slainte Bars LLC*, No. 21-cv-03750-JSC, 2022 WL 1426979, at \*5 (N.D. Cal. May 5, 2022) (noting that even if the court were to credit plaintiff's alleged intent to re-visit businesses he sued, the evidence demonstrated that he developed an intent to return months after the complaint was filed; "[s]tanding, however, is determined at the time of the filing of the operative complaint[.]"); *see also generally EHang, Inc. v. Wang*, No. 21-cv-02700-BLF, 2022 WL 1082017 \*2 (N.D. Cal. Apr. 11, 2022) ("'[S]tanding—where it would have been necessary to bring the claim in the district court—cannot be created retroactively.'") (quoting *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 483 (9th Cir. 2011)).

Nevertheless, in a case where the defendant attempted to impeach an ADA plaintiff at trial regarding his stated intent to return to the defendant's premises, the Ninth Circuit recently held that the plaintiff's post-complaint visits properly could be considered "as evidence of his intent to return." *Langer v. Kiser*, — F.4th —, No. 21-55183, 2023 WL 353215, at \*9 (9th Cir. Jan. 23, 2023). While acknowledging that "standing 'ordinarily depends' on the facts that exist at the time the complaint is filed," the Ninth Circuit stated that trial evidence showing that the plaintiff returned to the premises several times after filing suit "is convincing evidence that his professed intent to return is sincere and plausible." *Id.*

10

1 Unlike the present case, *Langer* does not address a situation where the plaintiff amended
2 his complaint to include new facts that may not have existed at the time he commenced his
3 lawsuit. *See id.* (indicating that "the facts as they existed when [the plaintiff] filed his complaint"
4 included allegations that he was both deterred from the shop as a customer, and also intended to
5 return to assess compliance with the ADA). And as discussed below, *Langer* also expressly notes
6 that credibility determinations may still be made against a serial litigant, based on "something
7 other than the fact that the litigant files a lot of ADA cases to instill doubt in his testimony." *Id*. at
8 *8. But to the extent TJX contends that the SAC must be dismissed now for lack of standing
9 because Mr. Gastelum relies, in part, on post-lawsuit visits to the Gilroy HomeGoods store,
10 *Langer* compels a contrary conclusion and suggests that Mr. Gastelum should be given an
11 opportunity to proceed beyond the pleadings and substantiate his claimed intent to return to that
12 store.

13 TJX nonetheless maintains that the SAC is conclusory and fails to allege specific facts
14 stating why Mr. Gastelum wants to return to the Gilroy HomeGoods store. Where the plaintiff
15 relies on a deterrence theory, and "the public accommodation being sued is far from the plaintiff's
16 home," the Ninth Circuit has "found actual or imminent injury sufficient to establish standing
17 where a plaintiff demonstrates an intent to return to the geographic area where the accommodation
18 is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best W.*
19 *Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008) (finding that plaintiff who lived in
20 Sacramento sufficiently alleged intent to return and stay at a Santa Barbara hotel based on
21 evidence that she visited Santa Barbara one to three times a year, had three specific trips planned
22 for that year, and had specific reasons related to the "hotel's style, price, and location" for wanting
23 to stay at that particular hotel); *see also Doran v. 7-Eleven, Inc*., 524 F. 3d 1034 (9th Cir. 2008)
24 (concluding that although the plaintiff lived over 500 miles away from the store in question, he
25 established an intent to return by "alleg[ing] that he had visited the 7–Eleven store on ten to
26 twenty prior occasions, that he is currently deterred from visiting the store because of its
27 accessibility barriers, that the store is conveniently located near his favorite fast food restaurant in
28 Anaheim, and that he plans to visit Anaheim at least once a year on his annual trips to

11

Disneyland."); *Pickern*, 293 F.3d at 1138 (finding that plaintiff adequately alleged that he was deterred from visiting a grocery store 70 miles from his home where he alleged that he preferred to shop there during his weekly visits to his grandmother).

In the SAC, Mr. Gastelum alleges that he "wanted to return and patronize" the Gilroy HomeGoods store, but is "deterred due to his actual personal knowledge of the barriers gleaned from his encounter with them." Dkt. No. 27 ¶ 10. The SAC further alleges that Mr. Gastelum:

> will return to [that store] to avail himself of its goods and services and to determine compliance with the disability access laws once it is represented to him that the [store] is accessible. Plaintiff is currently deterred from doing so because of his knowledge of the existing barriers and his uncertainty about the existence of yet other barriers on the site. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again.

Dkt. No. 27 ¶¶ 18, 43. In his opposition to TJX's present motion to dismiss, Mr. Gastelum premises his alleged intent to return largely upon a desire to travel throughout the state of California. He avers that he "regularly travels all over California from San Diego to San Francisco, from Stockton to Bakersfield," making several trips every year, for the purpose of enjoying locations and activities that are not available to him in Arizona, such as the Pacific Coast Highway, the San Francisco Bay Area, the wine country in Napa and Sonoma, and fruit stands in the Central Valley.[3] *Id*. ¶¶ 12, 13, 15. He further states that he visits family in Bakersfield, Fresno, San Jose, Modesto, Merced, and Shafter, and attends barbecues for the 49ers Faithful Empire Club, which has "chapters all over California." *Id*. ¶¶ 13, 14.

TJX contends that the SAC's allegations and Mr. Gastelum's declaration fail to provide any specific facts explaining why he wants to return to the Gilroy HomeGoods store in the future. Additionally, TJX argues that Mr. Gastelum's allegations of deterrence are at odds with his own

---

[3] TJX requests that the Court take judicial notice of an in forma pauperis application Mr. Gastelum filed in July 2021 in another litigation in another court, arguing that the information in the application "makes it highly unlikely that [Mr. Gastelum] is vacationing all year in various California locations." Dkt. No. 34 at 9; Dkt. No. 34-1. Whatever that IFP application might show with respect to Mr. Gastelum's finances in July 2021, the Court notes that in August 2021 he paid the filing fee in the present matter. *See* Dkt. No. 1. Thus, the IFP application is not probative of TJX's contention regarding the state of Mr. Gastelum's finances. TJX's request for judicial notice of that document is denied.

1    conduct in going back to the store twice after filing the present lawsuit.  Unlike the plaintiff in

2    *Langer*, who lived ten minutes away from the subject lobster shop and had a "professed taste for

3    lobster," *see* 2023 WL 353215 at *7, *9, there is no dispute that Mr. Gastelum lives in Casa

4    Grande, Arizona, about 740 miles from the Gilroy HomeGoods store.  *See* Dkt. No. 32 ¶ 11; Dkt.

5    No. 28 at 4.  While he says that Gilroy is one of the cities he visits "two to three times per year,"

6    with a planned a trip in "January of 2023" (Dkt. No. 32 ¶ 36), Mr. Gastelum describes Gilroy as

7    merely one of several cities along the Pacific Coast accessible from U.S. Highway 101 and

8    California Route 1.  Dkt. No. 32 ¶¶ 13.a., 18.  And there is no dispute that the Gilroy HomeGoods

9    store—and all other stores identified in the SAC—are part of a chain of retail stores with many

10   locations, including in places closer to Mr. Gastelum's home in Arizona.  *See* Dkt. No. 32 ¶ 23.

11        Mr. Gastelum's sweeping and generalized allegations about his future intent to travel and

12   visit stores everywhere in California, without more, might be insufficient to establish a genuine

13   intent to return to the Gilroy HomeGoods store as a bona fide customer.[4]  However, in view of Mr.

14   Gastelum's allegations that he intends to return to the Gilroy HomeGoods store to assess

15   compliance with disability laws (Dkt. No. 27 ¶¶ 18, 43), *Langer* again counsels against dismissal

---

[4] *See, e.g., Gastelum v. Five Below, Inc.*, No. 1:22-cv-00825-AWI-SAB, 2022 WL 6224274, at *7 (E.D. Cal. Oct. 7, 2022) (finding that "a plan to revisit an establishment 'sometime' within a certain month is too vague and generalized to establish a legitimate intent to return" and "[a]t most," Mr. Gastelum's allegations about his travel throughout California "may demonstrate he has a reason to return to the Fresno area; however, they do not establish a 'genuine' intent to return to either the Riverside Store or the Blackstone Store[.]"), *report and recommendation adopted*, 2023 WL 159577 (E.D. Cal. Jan. 11, 2023); *Id*. at *8 (finding that plaintiff's claimed intent to return was not plausible, given "that he has visited Five Below stores closer to his home in the Phoenix Metropolitan Area, but noticed that they are also inaccessible."); *Gastelum v. Five Below, Inc.*, No. 1:22-cv-00825-AWI-SAB, 2022 WL 2704770, at *4 (E.D. Cal. July 12, 2022) (finding that plaintiff did not provide "any reason whatsoever as to why he must avail himself of unspecified goods and services at the Five Below located in Fresno, California, when several other Five Below stores are located in much closer proximity to Plaintiff's residence in Casa Grande, Arizona."); *Blue Diamond Hospitality LLC*, 2022 WL 4292957, at *6 (finding that Mr. Gastelum did not adequately allege intent to return where he "fail[ed] to allege facts establishing specific ties to the Gilroy area or Defendant's Hotel[.]"); *Slainte Bars, LLC*, 2022 WL 1426979 at *4 (finding that plaintiff failed to establish a genuine intent to return where he did not offer "any specific connection to Redwood City, any specific plan to return to Redwood City, or any specific reason to return to the Alhambra Irish House in Redwood City."). *Cf. Gastelum v. TJX Companies*, No. 21CV1435-GPC (BLM), 2022 WL 2906492 (S.D. Cal. July 22, 2022) (finding plaintiff adequately alleged intent to return to San Diego and the store at issue where he alleged that he "finds San Diego attractive due to the beach and Sea World," visits San Diego two to three times per year, and planned to visit San Diego in October 2022).

United States District Court
Northern District of California

of Mr. Gastelum's ADA claim. *See Langer*, —F.4th —, 2023 WL 353215 at *7 ("Being an ADA tester is, in fact, a legitimate reason to go to a business, and the district court's insinuation otherwise is legally flawed. Visiting the property to identify potential ADA violations is consistent with having a credible intent to return; in other words, credibility is not mutually exclusive with being a tester."). Nothing in *Langer* suggests that the plaintiff's concurrent allegations of deterrence as a customer were inconsistent with his professed intent to return to the defendant's premises as an ADA tester. Therefore, to the extent TJX contends that the SAC must be dismissed because Mr. Gastelum's alleged deterrence as a customer is incompatible with his claimed status as an ADA tester and professed intent to return to the Gilroy HomeGoods store, TJX's motion to dismiss is denied.

TJX makes an additional factual challenge to standing by presenting a chart purporting to show that Mr. Gastelum filed over 40 ADA Title III lawsuits in California, based on alleged visits to over 50 establishments across California in twelve days, i.e., June 28-July 4, 2021, August 10-11, 2021, and January 25-27, 2022. *See* Dkt. No. 28 at 15-19. Mr. Gastelum has neither refuted the information in TJX's chart nor responded to TJX's arguments about his other lawsuits. *Langer* expressly noted that there is no "outright prohibition on making credibility determinations against serial litigants," but stated that "there must be something other than the fact that the litigant files a lot of ADA cases to instill doubt in his testimony." *Langer*, 2023 WL 353215 at *8. For example, "if a plaintiff alleged that he broke his leg multiple times in one day from the same barrier at different locations, a court would be prudent to question his credibility." *Id*. "Or, if [a plaintiff] had alleged personally encountering inaccessible parking at businesses in California, Hawaii, and Alaska on the same day, an adverse credibility determination would be well taken." *Id*. "But merely driving around, documenting ADA noncompliance, and filing multiple lawsuits is not in and of itself a basis for being found noncredible." *Id*. Here, TJX has presented nothing more than information showing that Mr. Gastelum has filed a number of ADA lawsuits based on his visits to various businesses across California. To the extent TJX contends that Mr. Gastelum could not possibly have visited the identified establishments on the dates in question, TJX's argument would require the Court to make assumptions about facts that are not before the Court,

14

including, for example, the order in which Mr. Gastelum visited various locations, the times of day he visited, driving distances, estimated driving times, and each businesses' hours of operation.

In sum, on this record and in view of the Ninth Circuit's recent decision in *Langer*, the Court finds no basis to dismiss Mr. Gastelum's ADA claim for lack of standing with respect to the Gilroy HomeGoods store.

### 3. Other Stores

As discussed above, for the first time in his SAC Mr. Gastelum included allegations about alleged visits to seven other stores located throughout California. The Court questions Mr. Gastelum's decision to amend his pleading *in this action* with allegations concerning different stores located in each of California's four federal districts. Mr. Gastelum's original complaint concerned only the Gilroy HomeGoods store. Dkt. No. 1. On January 19, 2022, the Court dismissed that complaint and gave Mr. Gastelum leave to amend "to address the deficiencies described by [the January 19, 2022] order by pleading specific facts to support his alleged deterrence from returning to the store in question," and to identify the particular statute(s) on which he based any state law claims for relief. Dkt. No. 18 at 8. While the SAC was filed pursuant to a stipulation and order (Dkt. No. 25), subject to resolution of disputes over the propriety of Mr. Gastelum's allegations, the SAC includes amendments that the Court did not permit Mr. Gastelum to make. Moreover, it remains unclear why Mr. Gastelum asserts claims against these other stores in this Court and this litigation. At least two of the stores in question were visited after the present lawsuit was filed, and no one has argued or even suggested that the SAC properly could or should be deemed a supplemental pleading under Rule 15(d).

Accordingly, Mr. Gastelum's claims concerning the stores other than the Gilroy HomeGoods store are dismissed, without prejudice.

### B.     Unruh Act Claim

Where a federal court has original jurisdiction over a claim pursuant to federal law, it also has supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(a). Nevertheless, 28 U.S.C. § 1367(c)(4) authorizes a district court to "decline to exercise supplemental jurisdiction over a claim . . . if . . . in exceptional circumstances, there are other compelling reasons for

declining jurisdiction." In *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021), the Ninth Circuit recognized that a "recent confluence of several California-law rules have combined to create a highly unusual systemic impact on ADA-based Unruh Act cases that clearly threatens to have a significant adverse impact on federal-state comity," *id*. at 1211. Recently enacted procedural filing requirements in California state courts have resulted in "a wholesale shifting of Unruh Act/ADA cases into . . . [California federal courts.]" *Id*. at 1212. As a consequence of this shift, "the procedural strictures that California put in place have been rendered largely toothless, because they can now be readily evaded." *Id*. at 1212-13. The Ninth Circuit described these circumstances as "exceptional" and a "very substantial threat to federal-state comity . . . namely, that retention of supplemental jurisdiction over ADA-based Unruh Act claims threatens to substantially thwart California's carefully crafted reforms in this area and to deprive the state courts of their critical role in effectuating the policies underlying those reforms." *Id*. at 1213. Accordingly, the Ninth Circuit held that the Central District of California acted within its discretion to conclude that "this extraordinary situation threatens unusually significant damage to federal-state comity and presents 'exceptional circumstances' within the meaning of [28 U.S.C.] § 1367(c)(4)." *Id*. at 1213.

Although TJX generally requests that the Court decline jurisdiction over Mr. Gastelum's Unruh Act claim, and the parties have addressed jurisdictional issues in their briefing, they have not specifically addressed how the Court should exercise its discretion regarding supplemental jurisdiction over Mr. Gastelum's Unruh Act claim. Following *Arroyo*'s guidance, the Court orders Mr. Gastelum to show cause why this Court should not decline to exercise supplemental jurisdiction over his Unruh Act claim. *See Garcia v. Maciel*, No. 21-cv-03743-JCS, 2022 WL 395316, at *5 (N.D. Cal. Feb. 9, 2022) (declining supplemental jurisdiction where "[u]nder the circumstances of this case, which has not progressed beyond threshold questions of standing and jurisdiction, the strong comity concerns identified by the Ninth Circuit in *Arroyo* outweigh any countervailing considerations of economy and efficiency that might be adversely affected by requiring Garcia to refile his Unruh Act claim in state court."). Mr. Gastelum shall file his response by **February 8, 2023**. If TJX chooses to file a reply, it shall do so by **February 15,**

**2023**.

To the extent Mr. Gastelum seeks leave, without explanation, to substitute his Unruh Act claim with one under the California Disabled Persons Act (Dkt. No. 31 at 12), Cal. Civ. Code § 54, *et seq.*, his request is denied.[5]

## IV. CONCLUSION

Based on the foregoing, TJX's Rule 12(b)(1) motion to dismiss Mr. Gastelum's ADA claim for lack of subject matter jurisdiction is denied. Mr. Gastelum shall file his response to the Court's order to show cause regarding his Unruh Act claim by **February 8, 2023**. If TJX chooses to file a reply, it shall do so by **February 15, 2023**.

**IT IS SO ORDERED.**

Dated: January 25, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[5] In any event, California's heightened pleading requirement also applies to the Disabled Persons Act. *See TJX Cos.*, 2022 WL 2906492 at *8; *see also* Cal. Civ. Code § 425.50(a) (heightened pleading requirement applies to "construction-related accessibility claim" as defined under California Civil Code § 55.52); Cal. Civ. Code § 55.52(a)(1) (defining "Construction-related accessibility claim" as "any civil claim in a civil action with respect to a place of public accommodation, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard, as defined in paragraph (6)."); Cal. Civ. Code § 55.52(a)(6) (defining "Construction-related accessibility standard" as "a provision, standard, or regulation under state or federal law requiring compliance with standards for making new construction and existing facilities accessible to persons with disabilities, including, but not limited to, any provision, standard, or regulation set forth in Section 51, 54, 54.1, or 55 of this code[.]")